Filed 2/27/23  In re N.T. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re N.T. et al., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B321456 (Super. Ct. No. 19JD-00362) (San Luis Obispo County) |
| SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>    Defendant and Appellant. | |

A.C. (Mother) appeals an order of the juvenile court declaring that her minor child N.T. is adoptable and terminating her parental rights.  (Welf. & Inst. Code, § 366.26, subd. (c)(1).)[1]
We decide that the court properly considered and applied the

---

[1] All statutory references are to the Welfare and Institutions Code.

holding of *In re Caden C.* (2021) 11 Cal.5th 614, 636 (*Caden C.*) to conclude that the beneficial parental relationship exception to adoption did not apply. (§ 366.26, subd. (c)(1)(B)(i).) We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On September 3, 2019, the San Luis Obispo Department of Social Services (DSS) received a report that Mother was struggling with drug abuse and homelessness. Her nine-year-old son N.T. had witnessed drug abuse and assaults upon her. DSS requested Mother to participate in random drug testing; she agreed but failed to attend several testing appointments. She also refused to establish a safety plan regarding N.T.

DSS placed N.T. in protective custody after his school reported that a man not listed as an emergency contact appeared at school under the influence of drugs and sought to take N.T. School employees and law enforcement attempted to reach Mother but her telephone was disconnected and she was not at her recent address.

At the time DSS placed N.T. in protective custody, he had red bite marks on his arms and suffered from dental problems. He reported that he was living in a motel room with Mother, her daughter, and two men.

*Detention, Jurisdiction, and Disposition*

On October 21, 2019, DSS filed a dependency petition pursuant to section 300, subdivision (b)(1), alleging that N.T. was at serious risk of harm due to Mother's drug abuse and homelessness. The petition also alleged that J.G. (alleged Father) was homeless and his whereabouts unknown. The following day, the juvenile court held a detention hearing and ordered N.T. removed from Mother's care. DSS placed N.T. in the care of his current foster parents who intend to adopt him.

2

On January 29, 2020, the juvenile court held a jurisdiction and disposition hearing. Mother did not attend and her attorney stated that she had been unable to contact her. Prior to the hearing, DSS made several unsuccessful attempts to contact Mother. Mother also had not attended the numerous DSS team meetings concerning N.T.

The juvenile court sustained the allegations of the dependency petition following the parties' submission on DSS's recommendation. It also ordered Mother to participate in family reunification services, including drug treatment, random drug testing, mental health treatment, and parent education. Mother also received weekly supervised visits with N.T.

*Six- and 12-Month Reviews*

By the time of the six-month review hearing, Mother had not followed through with reunification services and did not consistently contact DSS. DSS's efforts to contact Mother were unsuccessful. Mother remained homeless and unemployed, and did not engage in drug and mental health treatment. Mother consistently visited and telephoned N.T., however, and hoped to reunify.

On July 23, 2020, the juvenile court held a six-month review hearing. Mother did not attend and her attorney was unable to contact her. The parties submitted on the DSS reports, which recommended in part that Mother receive an additional six months of reunification services. The court then continued Mother's services and set a 12-month review hearing.

By the time of the 12-month review hearing, Mother failed to make consistent contact with DSS and had not participated in reunification services. She also admitted that she continued to use methamphetamine and marijuana. DSS's efforts to contact

3

Mother were unsuccessful. Despite Mother's continued failure to engage in services, she consistently visited N.T. and telephoned him nightly. The DSS social worker observed, however, that Mother's relationship with N.T. resembled a friendship rather than a parent-child relationship. Meanwhile, N.T. was thriving in his foster home and referred to his foster parents as his mother and father. N.T. informed the CASA volunteer that he would be sad if he could not live with Mother and his foster parents.

On February 10, 2021, the parties appeared for a contested 12-month review hearing. DSS and N.T.'s counsel recommended that Mother's reunification services terminate and that N.T. remain with his foster parents.

Mother testified at the review hearing that she recently became involved in drug treatment and testing. She admitted that she used illegal drugs until January 2021 but stopped using drugs when she learned that DSS recommended termination of her parental rights.

The juvenile court commended Mother for her recent reformation but stated that N.T. had been a dependent child for 16 months and that Mother's efforts were too little and too late. The court then terminated reunification services and set a permanent plan hearing. (§ 366.26.) Mother petitioned this court for an extraordinary writ regarding the termination of her reunification services. We denied the petition. (*A.C. v. Superior Court* (June 17, 2021, B310402 [nonpub. opn.].))

*Section 388 Petition and Section 366.26 Hearing*

DSS filed its permanent plan report on May 25, 2021, and recommended that N.T. be found adoptable and Mother's parental rights be terminated. N.T.'s CASA volunteer also filed a report and stated that it was in N.T.'s best interest that he be

4

adopted by his foster parents. Prior to the hearing, Mother filed a modification petition requesting the continuation of reunification services in light of her recent sobriety, stable employment, and permanent housing.

At the permanent plan hearing, Mother testified that she had gained custody of N.T.'s older half-sister and had been sober since January 15, 2021. Mother asserted that the beneficial parental relationship exception to adoption applied. The DSS social worker testified that N.T. referred to his foster parents as his parents and that he had lived with them for nearly two years. She acknowledged, however, that N.T. stated that he wished to live with his Mother and his foster parents.

At the conclusion of the hearing, the juvenile court found that Mother had established changing, but not changed, circumstances and it denied her modification petition. The court also found that N.T. was adoptable and it terminated Mother's parental rights. The court found that the beneficial parental relationship exception to adoption did not apply based in part upon N.T.'s ability to maintain a substantial relationship with Mother and his half-siblings.

Mother appealed and asserted that the juvenile court erred by applying an incorrect legal standard pursuant to *In re Caden C., supra,* 11 Cal.5th 614. DSS agreed and stipulated to a reversal. We approved the stipulation and issued a remittitur on January 4, 2022.

*Post-Remittitur Proceedings*
*Second Section 388 Petition and Second Section 366.26 Hearing*

DSS filed a status review report on January 26, 2022, for a review hearing. DSS reported that N.T. had an infant half-sister who would be placed in N.T.'s foster home once the infant was

5

discharged from hospital neonatal care. DSS also reported that N.T. was happy in his foster home. DSS observed that N.T.'s relationship with Mother was more a friendship than a parent-child relationship. Mother and N.T. visited regularly, however, and spoke on the telephone twice a week.

DSS later filed an updated section 366.26 report stating that N.T.'s half-sister was now living with him in his foster home. DSS opined that adoption, not legal guardianship, would provide N.T. with permanency and stability. N.T. then had lived with his foster parents for approximately two and one-half years.

Mother filed a second modification petition requesting family reunification services or placement of N.T. with her with family maintenance services. She asserted that she had stable employment and maintained her sobriety.

On June 29, 2022, the juvenile court held a permanent plan hearing. The DSS social worker testified that adoption would provide N.T. with stability and permanence. She pointed out that N.T. had become bonded with his infant half-sister and helped care for her. The social worker also testified that N.T. believed that he had been adopted already by his foster parents.

Mother testified that she had been sober for nearly 18 months and participated in random drug testing. She stated that she maintained her sobriety by working 60 hours a week and attending counseling.

At the conclusion of the hearing, N.T.'s counsel stated that she agreed with the DSS recommendations and added that N.T. stated that he wanted to be adopted by his foster parents. Counsel added that N.T. is a parentified child who is overly protective of Mother.

The juvenile court stated that it was mindful of *Caden C.,* but that the relationship between Mother and N.T. was not the substantial relationship discussed in that decision. The court acknowledged that Mother had rehabilitated remarkably, consistently visited N.T., and had a positive relationship with him. Nevertheless, the court decided that the parental-benefit exception to adoption did not apply. The court also denied Mother's modification petition, noting in part that N.T. had become more identified with his foster family and infant half-sister.

Mother appeals and contends that the juvenile court abused its discretion by not applying the beneficial parental relationship exception to the adoption of N.T. (§ 366.26, subd. (c)(1)(B)(i).) Alleged Father did not appear in the proceedings and is not a party to this appeal.

### DISCUSSION

Mother asserts that N.T. would benefit from continuing his relationship with her to such a degree that he would be harmed by termination of parental rights. She describes N.T.'s notion of adoption as one in which he believed that he could continue a relationship with her.

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless the court finds a compelling reason for determining that termination would be detrimental to the child due to an enumerated statutory exception. (*In re Caden C., supra*, 11 Cal.5th 614, 629.) The beneficial parental relationship exception of section 366.26, subdivision (c)(1)(B)(i) requires a showing by a preponderance of the evidence that the parent has regularly visited the child, that

7

the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child. "[T]he exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C.*, at p. 630.)

Application of the beneficial parental relationship exception rests upon a variety of factual determinations and is properly reviewed for substantial evidence. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 630.) The "ultimate decision" that termination would be harmful, however, is reviewed for an abuse of discretion. (*Ibid.*) The parent bears the burden of establishing three elements of the exception: 1) regular visitation and contact; 2) a relationship, the continuation of which would benefit the child; and 3) termination of parental rights would be detrimental to the child. (*Id.* at pp. 631, 636.) Ultimately, the juvenile court must decide "whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.) What the court must determine, therefore, "is how the child would be affected by losing the parental relationship – in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.)

Mother did not meet her evidentiary burden to establish that her relationship with N.T. was sufficiently compelling to outweigh the legal preference for adoption. Although N.T. loves Mother and has an emotional bond with her, that bond is not the substantial positive emotional attachment within the meaning of the exception and *Caden C.* Social workers observing Mother and

8

N.T. during visits described their relationship as resembling one of peers or friends rather than parent and child. N.T.'s prolonged custody within the dependency system and his attachment to his foster parents were due to Mother's failure to engage in reunification services for nearly 16 months. N.T. did not request more visits with Mother or complain that visits were too few. Social workers also recognized that N.T. was overly protective of Mother, such as defending her against an abusive boyfriend.

The juvenile court did not abuse its discretion by concluding that termination of Mother's parental rights would not be detrimental to N.T. By the time of the second permanent plan hearing, N.T. had lived with his foster parents – whom he called "Mom" and "Dad" – for nearly three years and looked to them as parents. His infant half-sibling also lived with his foster parents and they intended to adopt her. N.T. developed a close relationship with his half-sister and he participated in caring for her. Indeed, N.T. and his foster parents already believed that he had been adopted by them. N.T. was aware of the distinction between adoption and legal guardianship, having been explained those terms by DSS during a meeting. N.T.'s best interests were supported by a stable home and school and his making of neighborhood friends. The " 'exceptional circumstances' " that would allow the juvenile court to circumvent adoption were not present here. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 631.) The court did not abuse its discretion by denying application of the exception.

The juvenile court also did not rely upon inappropriate factors in declining to apply the beneficial parental relationship exception. The court commended Mother on her progress with drug treatment, mental health treatment, and full-time

employment.  The court also did not compare Mother's parental skills to those of the foster home nor did it discuss comparative wealth or inheritance possibilities.  (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1226 [parent's failure to complete reunification services plan does not preclude application of beneficial parental relationship exception]; *In re D.M.* (2021) 71 Cal.App.5th 261, 270-271 [juvenile court improperly focused on factors other than emotional attachment between parent and child].)

The parental termination order is affirmed.

NOT TO BE PUBLISHED.


                                        GILBERT, P. J.

We concur:



YEGAN, J.



BALTODANO, J.



10

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, Ann Duggan, Deputy County Counsel, for Plaintiff and Respondent.

11